Appeal of GEORGE C. PETERSON CO.        Docket No. 1266.

> A loss resulting from a dispute over the correctness of book charges and credits in connection with business transactions is deductible in the year in which settled by compromise or otherwise.
>
> A single item of inventory may not be taken at market where the usual method of pricing the inventory is .cost.
>
> Evidence *held* to justify certain deductions.

Submitted February 12, 1925; decided February 28, 1925.

*John A. Bussian, Esq.,* for the taxpayer.

*W. Frank Gibbs, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

### FINDINGS OF FACT.

The George C. Peterson Co. is an Illinois corporation and was, during the year 1920 and for some years prior thereto, engaged principally in the business of wholesale dealing in oil and oil products.

During the year 1918 and subsequently the Peterson Company furnished naphtha and other oil products to the Sherwin-Williams Company in large quantities under contracts entered into from time to time between the companies. As a result of these dealings various disputes arose as to the liability of the Sherwin-Williams Company to the Peterson Company and of the Peterson Company to the Sherwin-Williams Company, which disputes involved the following points:

1. During the year 1918 the taxpayer under its contract with the Sherwin-Williams Company furnished naphtha to that company f. o. b. Chicago. The contract between the two companies provided among other things with respect to furnishing naphtha, that "all agreements, quotations, acknowledgments, orders, and contracts are subject to any additions in the way of taxation which may be levied by the Government and subject to any additions to existing freight rates hereafter granted by the Interstate Commerce Commission." During the year 1918 the United States Government, as a war measure, was in charge of the operations of railroads generally throughout the United States and increased freight rates in general, and in particular freight rates from California to Chicago. Under the foregoing clause of the contract between the companies, the taxpayer asserted a claim against the Sherwin-Williams Company of $1,846.02 for additional freight upon certain shipments from California to Chicago. This claim was disputed by the Sherwin-Williams Company.

2. During the same period the taxpayer failed to deliver, upon demand of the Sherwin-Williams Company, certain naphtha as called for in the contract, and the Sherwin-Williams Company made purchases upon the open market to cover the same. The difference between the contract price and the open-market price upon this purchase was $1,123.20, which the Sherwin-Williams Company claimed to be due from the taxpayer and to which the taxpayer asserted a defense that it was ready and willing to make deliveries during the period; was advised by the Sherwin-Williams Company that it could not take the naphtha when it was offered, and that the naphtha was thereupon sold and the taxpayer was thereafter unable to furnish it when called upon by the Sherwin-Williams Company to do so.

3. During the same period certain lesser sums, representing switching charges, freight charges, and other like matters of difference between the accounts of the two companies, were in dispute. These accounts in dispute between the taxpayer and the Sherwin-Williams Company continued to be in dispute throughout the year 1919 and until approximately August, 1920, at which time Oscar L. Peterson, representing the taxpayer, and B. E. Nelson, representing the Sherwin-Williams Company, agreed to an adjustment of the accounts whereby the Peterson Company credited the Sherwin-Wil-

liams Company with a net sum of $2,481.70, which credit was thereupon charged off the books of the Peterson Company, said books being kept and the return of the Peterson Company being made for income-tax purposes upon an accrual basis.

During the year 1920 the taxpayer advanced to Oscar L. Peterson two sums of money,—$1,900 at one time and $1,195.03 at another. Of these sums, $1,195.03 was advanced for the purpose of covering the expenses of three trips made by Mr. Peterson and John A. Bussian to California in connection with the business of the taxpayer. The sum of $1,900 was advanced to Oscar L. Peterson, or was repaid to him, for the purpose of expenditures theretofore or thereafter made by him in connection with the entertainment of customers of the taxpayer.

During the year 1920 the taxpayer purchased at 2 cents per gallon certain naphtha which on test proved to be impure and was several times sold by the taxpayer and returned to it because of its unsatisfactory condition. Before the close of the year the taxpayer shipped the said naphtha to a refinery at Gordon, Kans., for refining, the cost of which shipment was $565.36. The naphtha was on hand at the refinery at the close of the year and was inventoried by the taxpayer. In taking the inventory this naphtha was priced at its original cost of 2 cents plus the aforementioned freight charges, and was then adjusted by the taxpayer to a market price of 2 cents, so that it was included in the inventory at 2 cents and not at the total cost of 2 cents plus the cost of shipment to Kansas. The taxpayer took its inventory at the beginning of 1920 upon a cost basis; took no other item of its inventory at the close of 1920 upon the basis of market, and took its inventory at the close of 1921 upon the basis of cost.

A revenue agent made an examination of the taxpayer's books and submitted his report under date of July 26, 1924. Along with other adjustments not disputed by the taxpayer he disallowed the foregoing three amounts deducted by the taxpayer, stating that the credit to the Sherwin-Williams Company account was a proper charge against the business of the year 1919 and not against the business of the year 1920; that the sum of $3,095.03 constituted donations, and that as to the item of $565.36 the taxpayer was not entitled to inventory the naphtha at market but was required to inventory it at cost, and that cost was the original 2 cents paid plus the freight charges of $565.36.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision will be settled on consent or on 10 days' notice in accordance with Rule 50.

### OPINION.

JAMES: Upon the first point of the settlement of the Sherwin-Williams account, it is clear from the statement of facts that a bona fide dispute was in existence between the taxpayer and the Sherwin-Williams Company up to and including the month of August, 1920.

The dispute involved the validity of charges which the taxpayer had made against the Sherwin-Williams Company and which it believed to be valid and proper charges, and charges which the Sherwin-Williams Company had made against the taxpayer and the Sherwin-Williams Company regarded as valid and proper. In so far as was necessary, the charges carried upon the books of the taxpayer had been properly reflected in its book income and returned in taxable income in the year in which the original transactions occurred. The taxpayer appears to have charged off the account as a bad debt, which it obviously was not, since the Sherwin-Williams Company was a solvent debtor. The parties, after insisting upon their respective views, agreed in 1920 to compromise their differences and the taxpayer agreed as a part of that compromise to accept a loss of $2,481.70. As such it was a loss sustained during that taxable year and properly deductible under section 234 (a) (4) of the Revenue Act of 1918.

Upon the second point there is nothing in the record to justify any finding that the item of $3,095.03 was donations. On the contrary, it appears that the money was actually disbursed by the taxpayer to Oscar L. Peterson as an ordinary and necessary expense of the business. In our opinion the entire amount is properly deductible by the taxpayer.

Upon the third item there appears to be some confusion as to the meaning of the regulations of the Commissioner with respect to inventories at cost, or at cost or market, whichever is the lower, as set forth in articles 1582 to 1585 of the Regulations.

Regulations 45, article 1583, as originally promulgated by the Commissioner, read as follows:

In the case of merchandise purchased, the invoice price less trade or other discounts, except strictly cash discounts, approximating a fair interest rate, which may be deducted or not at the option of the taxpayer, provided a consistent course is followed. To this net invoice price should be added transportation or other necessary charges incurred in acquiring possession of the goods.

It is clear from the foregoing quotation from the Regulations that the expense of $565.36, incurred by the taxpayer in shipping the defective naphtha from Chicago to Kansas *after it had been acquired by the taxpayer*, did not constitute a cost of the naphtha for inventory purposes at all, but was merely an expense necessitated by its defective condition. Since this expense was incurred during the year in question and added no value to the original cost of the naphtha, it was an ordinary and necessary expense of the year and deductible as such. This result the taxpayer attained by pricing the naphtha at 2 cents, which happened to be its original cost.

The inventory adjustment made by the examining agent should, therefore, be reversed and the expense of $565.36 allowed as a deduction in determining the net income of the taxpayer for the year 1920.

The taxpayer contended that it was entitled to value this item of the inventory at market. With this contention we are unable to agree. Inventories must be taken upon a consistent basis from year to year. *Appeal of Thomas Shoe Co.*, 1 B. T. A. 124. Here, however, the adjustment to a proper basis of cost agrees with the taxpayer's claimed market value.